Theodore H. CRAVEN, Sr., Executor of the Estate of Ralph H. Craven, Deceased, Appellant,

v.

Richard OGGERO, a/k/a Dick Oggero and David Reeves, Appellees.

No. 55582.

Supreme Court of Iowa.

Dec. 19, 1973.

Rehearing Denied Feb. 14, 1974.

George A. LaMarca and Louis A. Lavorato, Williams & Hart, Des Moines, for appellant.

H. Richard Smith, Ahlers, Cooney, Dorweiler, Allbee & Haynie, Des Moines, for appellees.

McCORMICK, Justice.

This is an appeal from directed verdicts for two defendants in a wrongful death action. Plaintiff's decedent was fatally injured in a fall at a construction site. This action was brought against two supervisory coemployees. Trial court sustained defendants' motion for directed verdicts on grounds the action is barred by the Iowa Workmen's Compensation Act and the evidence is insufficient on the issues of negligence and proximate cause. We reverse and remand.

The accident happened December 3, 1968. Plaintiff's decedent, Ralph H. Cra

ven, and defendants Richard Oggero and David Reeves were employed by The Weitz Company, Inc. on a project to construct an addition to the library on the campus of Iowa State University in Ames. Decedent was a laborer, Oggero was safety director, and Reeves was job superintendent.

A hoist had been in use for about 60 days to take material to and from the upper stories of the structure. It could not be placed closer than about three feet to the building because of protruding stonework. A plain sheet of three-quarter inch plywood approximately three feet by four feet was cut by carpenters on the job for use as a landing platform to bridge the space between the hoist shaftway and the building. It was not anchored and had to be taken out while the hoist was raised and lowered.

Decedent and another employee were assigned to remove debris from the second floor. The hoist was placed near a second story window. There was a ramp from the floor to the window sill. Wheelbarrows full of debris were taken up the ramp, across the bridging device to the hoist cage, and left there to be lowered to the ground and emptied. The worker had to go back into the building and remove the bridge so the hoist could be lowered and put the bridge in place again when the hoist returned with the empty wheelbarrows.

During the loading and unloading process the hoist cage would sway, and the plywood sheet would deflect from the weight upon it.

Decedent and the other laborer worked at their assigned duty all morning on the day involved. The accident occurred about 1:30 p. m. just after decedent put a loaded wheelbarrow in the cage. The plywood bridge pulled loose while he was on it, and decedent fell to his death.

Four questions are presented: (1) is plaintiff's action barred by the workmen's compensation statute? (2) is the evidence sufficient to generate a jury issue on the issue of defendants' negligence? (3) is there sufficient evidence on the issue of proximate cause? and (4) does the evidence establish the defense of contributory negligence as a matter of law?

■ I. *The statute.* Trial court held coemployees are immunized from liability under the Iowa Workmen's Compensation Act in an employee's action when the duties they are alleged to have breached have been assigned to them in implementation of the employer's duty to provide his employees a safe place to work. We do not agree.

Code § 85.22 expressly authorizes employee actions against "some person other than the employer" when the circumstances show legal liability of such third party. The effect of this section and Code § 85.20 which grants immunity from suit to the employer was squarely decided in Price v. King, 259 Iowa 921, 146 N.W.2d 328 (1966). The sole issue in that case was whether the employer's statutory immunity extends to employees. We held it does not. The employer alone is immune from suit. ("We are satisfied our workmen's compensation act was not intended to and does not relieve anyone other than the employer from liability imposed by that law." 259 Iowa at 924, 146 N.W.2d at 330. "It is to us apparent the Iowa Workmen's Compensation Act does not extend immunity from suit as a third party tort-feasor to a co-employee or fellow worker of an injured workman." 259 Iowa at 926, 146 N.W.2d at 331. "We hold that under the provisions of chapter 85, Code, 1962, a fellow employee is not immune to a suit by an injured employee. To do otherwise would require us to assume the prerogative of the legislature." 259 Iowa at 927, 146 N.W.2d at 331.)

The statute does not permit any exception based upon the official position or representative capacity of the fellow employee against whom suit is brought. The

legislature made the status of employer and employee mutually exclusive, with immunity cloaking the former but not the latter. And the term "employee" encompasses "every executive officer * * *, including a person holding an official position, or standing in a representative capacity of the employer * * *." § 85.61(2), The Code; cf. § 85.61(3)(c) (excepting partners and corporate directors who are not employees).

Therefore the fact defendants hold supervisory positions and are alleged to have breached duties assigned them in a representative capacity does not immunize them from liability. Trial court erred in holding plaintiff's action against them is barred by the workmen's compensation statute.

II. *Negligence.* Trial court held plaintiff failed to offer sufficient evidence to generate a jury issue that either defendant breached a personal duty owed plaintiff's decedent.

In deciding this question we view the evidence in its light most favorable to plaintiff since the verdicts were directed against him.

The jury could find the plywood sheet used as a landing platform did not have any safety features. It did not have guard rails, toe boards or cleats, nor was it secured to the building. Scaffolding could have been built to the level of the window sill to support a landing platform, or the platform could have been anchored to the building. There was evidence from which the jury could find the landing platform used was not reasonably safe and that employment of standard safety devices or a different structure would have made it safe.

As company safety director defendant Oggero had a duty to tour job sites to inspect for safety hazards and to ensure safety rules and procedures were followed. He testified, "It was my job to see that the men on the job sites had the benefit of these rules * * * in the work situation. It was my job to protect the workers." He would order the job superintendent to remedy unsafe conditions. As job superin-

tendent defendant Reeves had the authority and duty to eliminate unsafe conditions. He would order the carpenter foreman to have necessary carpenter work done and the labor foreman to use the devices thus produced.

Both men were aware of the use of the plywood sheet as a bridging device. Both knew the terms of rule 3.6(1) (then applicable but now superseded) of the Iowa Employment Safety Commission prescribing standards for devices used to bridge space between hoists and buildings. It provides:

"Where landing platforms connect the shaftway to the building, such platforms shall be constructed of sound material capable of sustaining maximum possible load. Standard guard rails and toe boards shall be provided." Iowa Departmental Rules (1971) at 235.

Oggero acknowledged this is a minimum safety standard and greater precautions may be required. He admitted the use of a bridging device is the kind of situation he would be obliged to inspect but said he was satisfied in this case when told before the accident by the carpenter foreman he had constructed a platform with cleats on it. Cleats are two by four's fastened to the bottom of a platform near its edges to stabilize it. He did not inspect to see what device was actually used.

Reeves said he knew the platform did not have either guard rails or toe boards but did not know whether it had cleats. He admitted he had the opportunity and duty to correct the situation if the platform was unsafe but did nothing in this case. He said, "You get to running these jobs and you've got so much that you kind of leave it to the foreman and it gets right down to the man to use the proper pieces [sic] that is provided for him." An employee testified Reeves confiscated the platform after the accident in an effort to conceal its inadequacy.

■ This evidence shows the duties defendants are alleged to have breached were assigned to them in their supervisory ca-

pacities by their employer to implement its obligation to provide employees a safe place to work. Plaintiff maintains this assignment created personal duties of defendants to his decedent which were negligently breached in this case. It is well established that "a servant may render himself liable for injuries negligently inflicted by him on a fellow servant in the transaction of the master's business." 57 C.J.S. Master and Servant § 578 at 348. Origin of the obligation in an assignment from the employer does not make it any less a personal duty. Graham v. Worthington, 259 Iowa 845, 866, 146 N.W.2d 626, 640 (1966); cf. Giarratano v. Weitz Company, 259 Iowa 1292, 147 N.W.2d 824 (1967).

The principle relied upon by plaintiff is expressed in Restatement of Torts, Second, § 324A.:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Illustration 3 under comment d is applicable here:

"The A Company employs B as superintendent of building construction work. One of his duties to A Company is to inspect a scaffold erected by an independent contractor, to make sure that it is safe for A Company's workmen. B negligently fails to inspect the scaffold, and as a result of its defective condition, which would have been discovered by proper inspection, the scaffold collapses and C, a workman employed by A Company, is injured. B is subject to liability to C."

The same principle in the agency context is incorporated in Restatement of Agency, Second, § 354:

"An agent who, by promise or otherwise, undertakes to act for his principal under such circumstances that some action is necessary for the protection of the person or tangible things of another, is subject to liability to the other for physical harm to him or to his things caused by the reliance of the principal or of the other upon his undertaking and his subsequent unexcused failure to act, if such failure creates an unreasonable risk of harm to him and the agent should so realize."

These restatement principles were applied by the New Jersey court in Miller v. Muscarelle, 67 N.J.Super. 305, 331, 170 A.2d 437, 451 (1961):

"The mere fact that two individuals are employed by the same employer does not, of itself, impose a duty on one of them to act for the safety of the other. But if the common employer has placed a duty on the one, either expressly or by clear implication, which he has accepted, respecting matters related to the safety of other employees, and there can be said to have been reliance on the performance of that duty such that default therein has forseeably brought the others within the risk of harm consequent upon nonperformance of the duty, liability for harm proximately so resulting will ensue."

We adopt the same rule. Where one employee has been assigned a duty to act for the safety of other employees, he has a personal duty to such other employees to so act. The fact he holds a supervisory position does not exculpate him from liability. Nor does the fact the duty is assigned in implementation of the employer's duty to provide all employees a safe place to work. Ransom v. Haner, 362

P.2d 282 (Alaska 1961) (reversing summary judgment for general superintendent and assistant superintendent and foreman); Jackson v. Georgia-Pacific, Inc., 195 Cal. App.2d 412, 15 Cal.Rptr. 680 (1961) (reversing judgment for plant superintendent and two foremen where liability claim was based on breach of duty to assure safety of employee on the job); Cravens v. Kurtz, 210 Cal.App.2d 80, 26 Cal.Rptr. 802 (1962) (reversing judgment for superintendent where alleged negligence was failure to provide plaintiff employee with proper equipment); Mason v. Case, 220 Cal.App. 2d 170, 33 Cal.Rptr. 710 (1963) (affirming judgment on jury verdict for defendant vice president and defendant shop foreman on ground of contributory negligence but recognizing defendants' alleged violation of state safety order was actionable negligence); Evans Chemical Works v. Ball, 159 Ky. 399, 167 S.W. 390 (1914) (affirming judgment against defendants including job foreman for breach of duty to protect plaintiff from danger); Givens v. Savona Mfg. Co., 196 N.C. 377, 145 S.E. 681 (1928) (affirming denial of removal to federal court and recognizing liability of superintendent and foreman may be based on failure to provide another employee a safe place to work, ordering him to work in an unsafe place, and failing to instruct him concerning dangers); Kaumans v. White Star Gas & Oil Co., 92 Utah 24, 63 P.2d 231 (1936) (affirming judgment for plaintiff against defendant corporate managing officer in part based on failure to provide plaintiff safe equipment); Hoeverman v. Feldman, 220 Wis. 557, 265 N.W. 580 (1936) (affirming order overruling demurrer to petition against defendant corporate president and manager based on negligence in ordering plaintiff to work with unsafe equipment and failure to warn).

■ Considering the evidence in its light most favorable to plaintiff there was substantial evidence in the present case from which the jury could find each defendant breached duties owed plaintiff's decedent.

As to Oggero there was sufficient evidence to support jury submission of plaintiff's allegations he was negligent in failing to inspect the bridging device to determine whether it was safe and in failing to require use of a safe landing platform when he knew or in the exercise of reasonable care should have known the device used was unsafe. Fabricius v. Montgomery Elevator Company, 254 Iowa 1319, 121 N.W.2d 361 (1963) (duty to inspect); Jorgensen v. Horton, 206 N.W.2d 100, 103 (1973) (violation of safety code as negligence).

Regarding Reeves there was sufficient evidence to support jury submission of plaintiff's allegation he was negligent in failing to provide decedent with a safe landing platform when he knew or in the exercise of reasonable care should have known the device provided was unsafe.

Trial court erred in holding there was insufficient evidence to show either defendant breached any personal duty to decedent.

III. *Proximate cause.* Trial court held there was also insufficient evidence on the issue of proximate cause. There was ample evidence from which the jury could find defendants' respective breaches of duty were each substantial factors in bringing about decedent's fatal injury. As in most cases, the issue of proximate cause was for the jury in this case. See Federated Mutual Imp. Ins. Co. v. Dunkelberger, 172 N.W.2d 137, 144 (Iowa 1969); Restatement, Second, Torts, § 431.

Trial court erred in holding otherwise.

■ IV. *Contributory negligence.* Defendants urge that even if trial court erred in sustaining the motion for directed verdicts on the grounds given, the ruling can and should be upheld on the ground urged below and overruled by trial court that the defense of contributory negligence was established as a matter of law. See McCarthy v. J. P. Cullen & Son Corp., 199 N.W.2d 362, 373 (Iowa 1972).

Defendants argue decedent should have known of the hazard involved in using the bridging device, and his fall resulted either because he negligently disregarded such hazard or because by some unknown conduct on his part he increased it. The employee working with decedent testified decedent was using the landing platform normally at the time of the mishap. The two workmen were following instructions and had used it all morning in the same manner without incident. Trial court did not err in overruling defendants' contention they proved their defense of contributory negligence as a matter of law.

The motion for directed verdicts should not have been sustained on any ground urged. The case is reversed and remanded for new trial.

Reversed and remanded.

All Justices concur except MOORE, C. J., and LeGRAND and REES, JJ., who dissent.