Newton J. BRIGDON, Appellee and Cross-Appellant,

v.

Jack A. BRANDRUP, Appellant,

and

Oscar B. Covington, Jr., and John Hayler, Cross-Appellees.

No. 60218.

Supreme Court of Iowa.

June 28, 1978.

John J. Murray, of Mitchell, Murray, Blackburn & Coleman, P. C., Fort Dodge, for appellee and cross-appellant.

H. Richard Smith, of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellant and cross-appellees.

HARRIS, Justice.

This suit is the result of an industrial accident in which a forklift operator was injured when a truck he was loading pulled away from a plant loading dock. The operator sued three plant supervisors. Verdicts were directed in favor of two and the case was submitted as to the third. A jury verdict was then rendered in favor of the injured forklift operator. All parties appeal. We affirm in part, reverse in part, and remand.

The basic facts are not disputed. Newton J. Brigdon (plaintiff) was employed at the Georgia-Pacific Gypsum Board plant in Fort Dodge, Iowa as a forklift operator. He had been on the job for several years.

A plant dock, from which discarded gypsum board was loaded, was outside and exposed to the elements. It tended to become slippery, slick, and sometimes frozen. The forklift which plaintiff operated was equipped with smooth tires, not intended for outside use in inclement weather. The gypsum board tended to become slippery. When particles dropped onto the loading dock traction was further decreased. Even if sand were provided it would get shoved off the dock as loads of debris were shoved across the dock onto the dump trucks.

On the day of the accident plaintiff had loaded about 15 truckloads before the one involved in the accident. Equipment on that particular dump truck was defective in at least two ways. There was no outside review mirror. As a result, when the truck bed became full, it was impossible for the operator to see to the rear. In addition the emergency brake did not work. The operator therefore had to remain in the driver's position in the truck cab while the truck was being loaded.

While plaintiff's forklift tongs were still under a pile of boards which lay on the truck, the truck operator believed the plaintiff was safely off the dump truck bed. The truck driver drove his truck ahead, pulling the forklift off the dock. Plaintiff attempted to back up but the forklift wheels spun on the wet, slippery surface. As the truck pulled away plaintiff shouted as loudly as he could. He also tried to honk the horn on the forklift but the horn did not work. Plaintiff's shouts tended also to be drowned out by noise of a wheelabrator machine being operated nearby.

Plaintiff was forced to jump nine feet to the ground as the forklift was pulled off the dock by the dump truck. On the way down his back hit the edge of a cement dock and he fell on frozen ground. He was severely injured.

All equipment mentioned was company equipment. The accident occurred within the scope of plaintiff's employment. The truck driver is not involved in this suit.

Plaintiff brought action for his personal injuries against three defendants: (1) Jack Brandrup, plant safety supervisor, (2) Oscar Covington, the plant manager, and (3) John Hayler, the plant laminating foreman and recent safety coordinator. Plaintiff believes each of the three, in varying ways, owed him a duty to provide a safe place to work. Plaintiff contends each violated his duty. As plant safety coordinator Brandr-

up held a wide range of responsibilities. According to his job description he was to assist department heads, the plant manager, and everyone in the plant in implementing safety meetings. He was to make plant inspections, and also make safety recommendations to the department heads and to the plant manager. These duties were assigned Brandrup by the company as a part of his job. His inspection tours around the plant were for the purpose of finding various potential safety hazards in the hope of correcting them before accidents occurred.

Plaintiff believes Covington's duties as general plant manager included an over-all responsibility to see the plant was run safely.

Hayler was laminating foreman on the date of the accident. Plaintiff points out, however, Hayler was in charge of safety from 1970 until about six weeks prior to the accident. When he had been safety coordinator Hayler followed up on some of the injuries, made plant inspections on occasions, and coordinated some of the safety meetings. Plaintiff testified that he urged the need of a lighting system and a horn device to Hayler several times. None was ever installed although the plant had three full-time electricians. Hayler also knew of the condition of the dock, and that it tended to become slippery and wet.

Plaintiff argues there was an alternative method which easily would have provided for safe loading of the dump trucks. The loading could be inside. In years past this had been done at the Fort Dodge plant and was the method in current use in several of the company's other plants. Apparently work was begun at one time to move the loading operation inside the plant. However the project was abandoned. The record shows several instances in which employees complained of the safety hazards at the dock. These complaints were raised at safety meetings before the accident at times when all three defendants were present.

Plaintiff could not refuse to work under the conditions however or else he would be fired.

In defense against plaintiff's claim Brandrup raises three basic arguments. First he points out he was new on the job and had no real power to do anything about company policies. He maintains it was not part of his job to implement safety procedures; at most he could merely make recommendations. Secondly Brandrup argues someone else should have been watching out for plaintiff's safety. He points to the elaborate plant and company structure to bolster this claim. Three different foremen would supervise plaintiff in his work and over each foreman there was a superintendent. There was another superintendent over the driver of the dump truck. There was also an assistant plant manager in charge of all superintendents.

Brandrup maintains he never observed anything about the procedure relating to the loading dock that he thought was contrary to company policy. He notes the regional safety man for the company observed the dock and never made any recommendations concerning its safety. And defendant argues he had never been assigned the duty to inspect each piece of equipment for mechanical working order. Such responsibilities were for those in the maintenance department. Finally Brandrup argues he was not even at the scene of the accident when it occurred.

Brandrup appeals from the jury verdict against him. Plaintiff cross-appeals from the ruling of the trial court sustaining motions to dismiss his claims against Covington and Hayler.

I. The first issue is presented by Brandrup's appeal. It is a question of whether plaintiff's evidence was sufficient to generate submissible issues with regard to: (a) a personal duty owed by Brandrup to defendant, (b) Brandrup's breach of any personal duty, and (c) whether any negligence of Brandrup was a proximate cause of plaintiff's injuries.

This issue is controlled by principles since changed by statute. Under § 85.20, The Code, as now amended, recovery against a

co-employee is allowed only for acts of gross negligence amounting to wanton neglect of safety. At the time of this accident however recovery was governed by principles discussed in *Craven v. Oggero*, 213 N.W.2d 678, 680–681 (Iowa 1973); *Moose v. Rich*, 253 N.W.2d 565, 571–572 (Iowa 1977); *Kerrigan v. Errett*, 256 N.W.2d 394, 397 (Iowa 1977) and *Davis v. Crook*, 261 N.W.2d 500, 504 (Iowa 1978).

█ It is clear the amendments, Acts of the 65th G.A., ch. 1111, § 1 (1974), were not retrospective. *Moose v. Rich*, supra, 253 N.W.2d at 571–572. Accordingly plaintiff did not allege nor attempt to show gross negligence and it is unnecessary for us to determine whether the acts of the defendant in this case amounted to gross negligence.

In *Kerrigan* we said:

"We now adopt those criteria for imposing individual liability on a co-employee found in *Canter v. Koehring Company*, 283 So.2d 716, 721 (La.1973):

'1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.

'2. This duty is delegated by the principal or employer to the defendant.

'3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

'4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.' " *Kerrigan*, supra, 256 N.W.2d at 397.

The question in *Kerrigan* was whether a co-employee supervisor had any individual responsibility for Kerrigan's safety. Because there was no showing the supervisor was acting in any capacity other than purely administrative he was not liable.

Defendant Brandrup attempted to show he similarly owed no such duty. But we believe the evidence, viewed in the light most consistent with the verdict, is substantial that Brandrup undertook a responsibility for plaintiff's safety. We have previously described Brandrup's responsibilities at the plant. The jury was not required to accept Brandrup's opinion that his plant function was meaningless and he thereby escaped responsibility because the company might fail to heed his recommendations.

█ We believe there was ample evidence justifying jury submission of the questions concerning whether Brandrup owed plaintiff a personal duty, whether Brandrup breached that duty, and whether Brandrup's negligence was a proximate cause of plaintiff's injury. Brandrup's contentions to the contrary are without merit.

II. As a separate assignment of error Brandrup challenges one of the trial court's instructions. In instruction 11 the trial court informed the jury of plaintiff's specifications of Brandrup's negligence.

█ We need not consider Brandrup's complaint on appeal that the specifications were in some respect repetitious. That crit-

icism was not raised in trial court. Hence error, if any, on such a claim was not preserved.

■ Brandrup's other complaints against the instruction are grounded on his belief the evidence does not support plaintiff's claims as to Brandrup's duties and breach of duties. What we have said in discussing issues in division I is dispositive of this assignment. Contrary to Brandrup's testimony there was evidence he should have known the problems at the plant. In fact Brandrup admitted in a deposition he was aware of the problems with the forklift. Brandrup's argument amounted in substance to a claim he was unaware of what was going on. But this is not the real issue. By his own admission he was in charge of plant safety. The question is whether he exercised reasonable care in carrying out his assigned duties. His lack of knowledge strongly supports, rather than detracts from, plaintiff's showing. As Brandrup himself testified, "Well, I was supposedly in charge of safety."

The various specifications were for the jury. The trial court was correct in submitting them.

■ III. Brandrup complains of trial court's instructions 13 and 14 and the related refusal of the trial court to give defendant's requested instruction 1. Brandrup rightly insists he cannot be held vicariously liable for the fault of others and that liability cannot be imposed upon him on the sole basis of general administrative responsibilities. Under *Kerrigan,* supra, it must be shown Brandrup had more direct involvement in the industrial operation giving rise to the injury in order for him to be liable. He complains the instructions as given fail to incorporate these principles. Our reading of instructions 13 and 14 and Brandrup's requested instruction lead as to the contrary conclusion. We believe his argument amounts only to a complaint the trial court did not choose language he preferred. We find the situation analogous to that in *Davis v. Crook,* supra, 261 N.W.2d at 504 where we said:

"Read together, we find the submitted instructions adequately explain the standards for determination of individual liability of co-employees for work-related injuries as laid down in *Kerrigan,* supra, 256 N.W.2d at 397, and *Craven,* supra, 213 N.W.2d at 682–683. Matters raised in defendants' requested instructions were substantially incorporated in the instructions which were given. No error results from a failure to submit the issues in the form requested. (Authority)." See also *Moose v. Rich,* supra, 253 N.W.2d at 571.

We find Brandrup's assignments, considered separately or together, to be without merit. We believe he received a fair trial. The judgment entered against him should be affirmed.

■ IV. In his cross-appeal plaintiff first argues the trial court erred in directing a verdict in favor of Covington. Covington, as plant manager, made inspections of the dock area, sat in on safety meetings, and was told of the slippery and unsafe condition existing at the dock, especially in inclement weather.

We observe that the question is a relatively close one and note the better practice under the circumstances is to submit the question to the jury and review it again, where appropriate, in a post-trial motion. Nevertheless we believe the trial court should be affirmed in holding no jury question was made out against Covington. We do not believe the evidence satisfied the criteria outlined in *Kerrigan.*

Discussions between plaintiff and Covington regarding dock conditions occurred in August of 1973 when Covington first became plant manager. Thereafter safety responsibilities were assigned by Covington to Hayler and Brandrup and eventually to Brandrup alone. Covington's relationship to plant safety, at least as it related to the dock area, appears to have been administrative only. From the time safety responsibility was assigned to the other plant officers Covington's interest appears only as that of a plant manager administering over safety officers to whom safety responsibility had been delegated. In this posture

safety responsibility was an administrative facet of the plant manager's over-all responsibilities.

Covington had 19 superintendents and an assistant manager. There is no doubt he was insulated from the various routine tasks of the operation.

Plaintiff's contention the trial court erred in directing a verdict in favor of Covington is without merit.

V. The final question is plaintiff's claim in his cross-appeal the trial court erred in directing a verdict against him in his claim against defendant Hayler. The question is more complex and is even closer than the one involving Covington.

Hayler, at the time of and for six weeks prior to the accident, was the laminating foreman at the plant. Such responsibilities would be even more remote from dock safety than those of Covington. However the evidence shows that for a period of time ending six weeks before the accident Hayler had been a plant foreman with additional responsibilities assigned to him as plant safety coordinator. At that time there was no plant safety supervisor. However a small portion of Hayler's time was spent as safety coordinator, largely to fill out safety reports and set up safety meetings. He helped train Brandrup to be safety supervisor.

As safety coordinator Hayler was present at safety meetings when complaints were made. He admitted he knew the dock was not an ideal situation, that it was slippery when it rained, and that there had been many complaints. He acknowledged the tires on the forklift were not appropriate for slippery materials.

■ Although Hayler's job as safety coordinator had ended six weeks prior to the accident we believe a jury question was made as to him. The *Kerrigan* rule which exempts supervisors from safety responsibilities which have been delegated is a practical acknowledgment of the actual duties undertaken in an industrial plant. It does not alter the fundamental tort principle that tort responsibility cannot be shifted by merely resting a similar responsibility upon another person. 57 Am.Jur.2d, Negligence, § 35, p. 382. Certainly there is nothing in *Kerrigan* to indicate safety responsibility is to be chronological, to be successively the exclusive burden of whoever holds the title of safety officer when a suit is brought.

■ The jury should have been allowed to consider plaintiff's claim that Hayler helped create an unreasonable risk of harm to plaintiff. The jury should have been directed to consider whether plaintiff was within a foreseeable class of persons who might be affected by Hayler's failure to carry out duties assigned to him by his employer. The jury might find these duties included responsibility to provide his co-employees a safe place to work. The jury might find from the evidence Brandrup and Hayler were concurrent tort feasors and that Hayler's negligence might also have been a proximate cause of plaintiff's injuries.

We hold it was error for the trial court to direct a verdict in favor of defendant Hayler.

In summary, we affirm upon the appeal of defendant Brandrup, we affirm in part and reverse in part upon the appeal of plaintiff, and remand the case for further proceedings consistent herewith.

Tax costs one fourth to plaintiff, one fourth to defendant Hayler, and one half to defendant Brandrup.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Justices concur except RAWLINGS, LeGRAND and MASON, JJ., who dissent from Division V.