# IN THE COURT OF APPEALS OF IOWA

No. 18-1545
Filed February 5, 2020

**BRIAN and LISA TERRY,**
     Plaintiffs-Appellants,

**vs.**

**MEGAN DOROTHY,**
     Defendant-Appellee.
_____

Appeal from the Iowa District Court for Story County, Bethany Currie, Judge.

Brian and Lisa Terry appeal the grant of summary judgment dismissing their civil claims against Megan Dorothy. **REVERSED AND REMANDED.**

Sarah M. Baumgartner of Hedberg & Boulton, P.C., Des Moines, for appellants.

Valerie A. Foote and Charles A. Blades of Smith Mills Schrock Blades Monthei, P.C., Cedar Rapids, for appellee.

Heard by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

Brian Terry was allegedly injured at work. When Brian settled his workers' compensation claims, he signed compromise settlement documents, which were approved by the workers' compensation commissioner ("commissioner"). Those documents included a listing of released parties including the employer and its employees. Later, Brian and his wife sued one of Brian's co-employees, Megan Dorothy, alleging gross negligence in relation to the work injury caused them damages. Dorothy moved for summary judgment. The district court granted Dorothy's motion. We reverse and remand for further proceedings.

**I.     Background Facts and Proceedings**

In 2015, Brian and Dorothy were employed by Lutheran Services of Iowa, Inc. (LSI). In October 2015, Brian was allegedly injured during the course of his employment with LSI. Brian pursued a workers' compensation action against LSI and its insurer, West Bend Mutual Insurance (West Bend).

In July 2017, Brian, LSI, and West Bend executed settlement documents for submission to and approval by the commissioner. The documents were submitted pursuant to Iowa Code section 85.35(3) (2017)[1] and began with the following recitation:

> A dispute exists under the Iowa Workers' Compensation Law, which the parties seek to resolve by full and final compromise disposition of Claimant's claim for benefits. The subject and nature of the dispute is whether Claimant's alleged October 14, 2015 work injury caused permanent impairment and permanent disability and, if so, the extent of permanent disability.

---

[1] Section 85.35, concerning settlements, provides, "The parties may enter into a compromise settlement agreement of the employee's claim to benefits as a full and final disposition of the claim."

The first document then recited Brian's claims of injury and damages and summaries of opinions and conclusions of medical and mental-health providers, which the parties represented established the dispute. The first document included a statement of awareness that Brian had read the "compromise settlement and attached page(s)," and he understood the settlement was all the money he would receive for his claim and that he would be "barred from future claims or benefits under the Iowa Workers' Compensation Law for the injuries compromised."

Several attachments were identified in the first document, including one called "Additional Terms of Settlement," which provided, in relevant part, that in exchange for a specified "lump sum" of "new money," LSI and West Bend agree to pay Brian

> as a full and final compromised settlement, satisfaction, and final discharge of all claims and demands that may exist against [LSI and West Bend], and any of their officers, directors, employees, agents, subsidiaries, affiliates, and parent companies ("Released Parties"), by reason of his employment and by reason of all injuries or damages sustained by Claimant on or about October 14, 2015, through his association with the Released Parties. The parties stipulate that the date of injury released in this document represents any and all claims of injuries that Claimant may have against the Released Parties relating to any of the body parts or systems as set forth in the following paragraph.

The additional terms also recited the payment "represents the final and only monetary payment the Claimant will ever receive from his employer or its workers' compensation carrier with respect to the contested workplace injury alleged herein." The commissioner approved the settlement.

In October, Brian and his wife, Lisa, filed a civil petition at law alleging Dorothy's gross negligence in carrying out her duties as Brian's supervisor caused (1) Brian's work injury and (2) Lisa to suffer loss of consortium with Brian.

Dorothy filed a motion for summary judgment. She argued the Terrys' suit should be dismissed "on one or more" of three "alternative grounds": (1) the compromise settlement acts as a final bar to the co-employee gross negligence claim; (2) "[t]he language of the settlement agreement" between Brian, LSI, and West Bend "includes release language that releases" Dorothy from liability for gross negligence as a co-employee; and/or (3) the claims are barred by the doctrine of election of remedies.

In its summary judgment ruling, the district court reasoned:

> By entering a compromise settlement—and by virtue of the Commissioner's subsequent approval thereof—Mr. Terry lost any further rights to pursue damages under Iowa Code section 85.20 for gross negligence against a co-employee both because the Additional Terms of Settlement specifically include a release for all co-employees and because Iowa Code section 85.35(9) provides that a compromise settlement approved by the Commissioner is a final bar to any further rights under chapter 85 regarding the subject matter of the compromise.

The district court granted Dorothy's motion and dismissed the Terrys' suit. The Terrys now appeal.

## II.     Standard of Review

"We review a district court's summary judgment ruling 'for correction of errors at law.'" *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 36 (Iowa 2018) (quoting *Walderbach v. Archdiocese of Dubuque, Inc.*, 730 N.W.2d 198, 199 (Iowa 2007)). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

### III.     Analysis

The Terrys argue on appeal that section 85.20 allows both a workers' compensation claim and a gross negligence claim, that the compromise settlement was by its terms limited to the workers compensation claim, and "the Commissioner would have denied for lack of jurisdiction" the compromise settlement documents if they had specified they were releasing a gross negligence claim.

Dorothy argues on appeal the district court correctly concluded the gross negligence claim was a claim "under" section 85.20.  Thus, the compromise settlement of the workers' compensation claim and the release of the parties to the workers' compensation claim as approved by the commissioner was a final bar to any rights under chapter 85, which included the gross negligence claim.

In Brian's workers' compensation case, the parties submitted the compromise settlement documents to the commissioner for approval pursuant to Iowa Code section 85.35(3).  A compromise settlement agreement is permissible to resolve a contested workers' compensation claim.  Iowa Code § 85.35(1); *see also* Iowa Admin. Code r. 876—6.1(1).   The parties represented to the commissioner that the dispute being settled was whether Brian's "alleged October 14, 2015 work injury caused permanent impairment and permanent disability and, if so, the extent of permanent disability."  The attached additional terms of settlement also set forth the manner of calculating the value of the settlement as required by workers' compensation rules.  The commissioner had the authority to approve the compromise settlement of the dispute as represented by the

settlement documents, as the documents show Brian was represented by counsel. *See* Iowa Code § 85.35(8)(b).

In the present gross negligence action, Dorothy, by written and oral argument in support of her motion for summary judgment, argued that the co-employee gross negligence claim was in effect a claim under Iowa Code chapter 85 and was thus extinguished by the compromise settlement agreement approved by the commissioner. *See id.* § 85.35(9) ("[A]n approved compromise settlement shall constitute a final bar to any further rights arising under this chapter [85] . . . regarding the subject matter of the compromise . . . .") The district court granted the motion, reasoning the gross negligence claim was "under Iowa Code section 85.20," and thus the commissioner's approval of the settlement agreement extinguished any further claims, including the Terrys' gross negligence claims against co-employee Dorothy.

Prior to 1974, the statutory immunity afforded employers under our workers' compensation statutes did not extend to co-employees or fellow workers of an injured worker. *See Craven v. Oggero*, 213 N.W.2d 678, 680–81 (Iowa 1973). The express language of Iowa Code section 85.22 "authorize[d] employee actions against 'some person other than the employer' when the circumstances show[ed] legal liability of such third party." *Id.* at 680. In 1974, section 85.22 was changed from "some person other than the employer," to "some person, other than his employer or any employee of such employer as provided in section eighty-five point twenty (85.20) of the Code." *See* 1974 Iowa Acts ch. 1111, § 2. The legislature concomitantly amended section 85.20 to provide that the rights and

remedies of chapters 85 and 85A are the exclusive and only rights and remedies of an employee against:

> (1) his employer; or
> (2) any other employee of such employer, provided that such injury or occupational disease arises out of and in the course of such employment and *is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.*

*Id.* § 1 (emphasis added); *accord Gourley v. Nielson*, 318 N.W.2d 160, 161 (Iowa 1982) (explaining section 85.22 was amended "to limit recovery against a fellow employee to only those cases in which the injury had been caused by the fellow employee's gross negligence"). In summary, in 1973 and before, the statutory immunity provided in the Iowa workers' compensation laws applied to employers, but not to co-employees or fellow workers. Thus, common law claims could be pursued against co-employees. In 1974, the legislature extended the employers' statutory immunity to co-employees so long as the injury was not caused by the co-employee's gross negligence.

While it is true that section 85.20(2) recognizes a possible gross negligence claim and sets the parameters for such a claim, the existence of the right to pursue the claim predated section 85.20. In fact, the right to pursue any negligence claim against a co-employee existed until the 1974 legislation. That legislation ended the right to pursue a common law negligence claim against a co-employee, but it preserved the preexisting common law right to pursue a gross negligence claim if the work injury is "caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Iowa Code § 85.20(2); *see also McGill v. Fish*, 790 N.W.2d 113, 120 (Iowa 2010)

(acknowledging prior cases had "referred to coemployee gross negligence as an 'action under Iowa code section 85.20,'" but clarifying that "such references have only identified the statutory source that excepted the claims from the exclusivity of the workers' compensation scheme" and making "it clear that section 85.20 does not recognize or create a cause of action based on gross negligence, but merely recognizes a restriction on an existing common law right of action against a coemployee for negligence by including a portion of the claim within the exclusivity of the workers' compensation scheme" (citations omitted)).

Therefore, the Terrys' claims against co-employee Dorothy alleging gross negligence are common law claims, not subject to the commissioner's authority or jurisdiction to resolve. The commissioner's approval of the compromise settlement could have no legal effect on any co-employee gross negligence claim because it is excepted from exclusivity by section 85.20(2). Therefore, the district court erred as a matter of law when it concluded the commissioner's approval of the compromise settlement under section 85.35(9) was a final bar to the Terrys' pursuit of co-employee gross negligence claims.

The dissent addresses an issue not raised by the parties: whether the settlement documents released the Terrys' common law claims. Dorothy argues:

> *There is no limitation* on the extent of the release and discharge in the compromise settlement *other than it pertains to matters covered by chapter 85* of the Iowa Code. *The commissioner would not have approved the compromise settlement if it pertained to matters outside of chapter 85.* By approving settlements including releases in favor of employees [as] occurred in this case, the commissioner acknowledges that the release of claims against co-employees is within his purview.

(Emphasis added.)

The first sentence of the quote above argues: "There is no limitation on the extent of the release and discharge in the compromise settlement other than it pertains to matters covered by chapter 85 of the Iowa Code." That sentence acknowledges the release is limited to matters covered by chapter 85. The second sentence asserts: "The commissioner would not have approved the compromise settlement if it pertained to matters outside of chapter 85." The Terrys argue a similar proposition: "[T]he commissioner would have denied for lack of jurisdiction" if the compromise settlement documents had specified they were releasing a gross negligence claim. We need not decide what the commissioner would have done. But, Dorothy's entire argument concerning the propriety and enforcement of the release language of the settlement is premised on the argument that the co-employee gross negligence claim is a chapter 85 claim, the release of which was subject to approval and in fact approved by the commissioner. The argument in her brief concerning the alleged breadth of the release language remains in the context of a chapter 85 claim and approval by the commissioner. The conclusion in her brief argues we should affirm the district court

> because the compromise settlement of plaintiff's workers' compensation claim involving the same subject matter as plaintiff's co-employee gross negligence claim, [the settlement] bars the co-employee gross negligence claim pursuant to the final bar set forth in Iowa Code § 85.35(9) and/or plaintiffs have released the co-employee gross negligence claim pursuant to the clearly stated language set forth in the compromise settlement approved by the commissioner.

Although Dorothy argues that our law favors settlements—with which the district court agreed, as do we—a careful reading of Dorothy's argument reveals it was all in the context of what the commissioner could approve and ultimately did

approve. The parties asked the commissioner to approve their compromise settlement of the pending workers' compensation claims. Iowa Code section 85.35 identifies the specific types of settlements that are authorized for workers' compensation claims. The compromise settlement documents identified a contested dispute that related strictly to the workers' compensation claim. The documents did not identify any other dispute. The settlement proceeds were calculated with specificity as required by the commissioner's rules[2] and were represented to the commissioner as a compromise of workers' compensation benefits. Dorothy's argument on appeal is that the law favors settlements and the release language in the settlement agreement was broad enough to release all claims because the claims were under chapter 85 and were within the jurisdiction and authority of the workers' compensation commissioner, and his approval made the release binding.[3]

---

[2] The compromise settlement recited: "In consideration of this payment, claimant releases and discharges the above employer and insurance carrier from all liability under the Iowa Workers' Compensation Law for the above compromised claim." The additional terms of settlement included an agreement to pay a lump sum to claimant, as "the final and only monetary payment the Claimant will ever receive from his employer or its workers' compensation carrier with respect to the contested workplace injury alleged herein and that it should, therefore, be allocated" as provided in the workers' compensation rules. Claimant's age and life expectancy were stated, the reduction for attorney fees was disclosed and the net weekly and monthly settlement rates were agreed.

[3] 66 Am. Jur. 2d *Release* § 29 (Nov. 2019 update) explains:

> [W]hen a release contains both general and specific language, the general language will be presumed to have been used in subordination to the specific language and will be construed and limited accordingly. In other words, when specific recitals in a release are followed by general language, the specific language restricts the scope of the general release language. If an apparent conflict exists between specific release language and the terms of a general release, some courts apply a rule of construction such that the words of general application used in the release that generally follow a

Dorothy has not asked us to affirm based on any argument that a non-chapter 85 claim—i.e., a common law claim—was released by the terms of the settlement agreement.  In fact, her argument that the release was a release of a chapter 85 claim is to the contrary.  We need not and cannot decide whether a release contained as part and parcel of a compromise settlement of a workers' compensation case approved by the commissioner could release a claim that is beyond the jurisdiction and authority of the commissioner.  That issue is not before us.  It was not briefed and no authority was cited in support of any such proposition.

We reverse the grant of summary judgment in favor of Dorothy and remand for further proceedings.

**REVERSED AND REMANDED.**

Tabor, P.J., concurs; May, J., dissents.

---

specific recital of the subject matter concerned are not to be given their broadest significance but will be restricted to the particular matters referred to in the recital.

(Footnotes omitted.)  *Accord Seymour & Co. v. Butler*, 8 Iowa 304, 304 (1859) ("A release is to be construed according to the particular purpose for which it was made, and a particular recital in such an instrument will restrain its general words."); 76 C.J.S. *Release* § 50 (Sept. 2019 update) ("General words in a release are limited and restricted by particular or specific words in a release.").

**MAY, Judge** (dissenting).

This case turns on a transaction between Brian Terry, his employer (LSI), and his employer's insurer (West Bend). LSI and West Bend paid $45,000 to Brian. In return, Brian signed a settlement agreement.[4]

When Brian signed the settlement agreement, whom did he release from liability? In the Terrys' view, Brian only released LSI and West Bend. In Dorothy's view, Brian released *not only* LSI and West Bend *but also* any of LSI's employees, including Dorothy.

The words of the settlement agreement show that Dorothy is correct. The agreement states that Brian "release[d] and discharge[d]" certain "Released Parties from all liability . . . related to" Brian's work injury. The "Released Parties" are defined to include LSI, West Bend, "and any of *their* officers, directors, *employees*, agents, subsidiaries, affiliates, and parent companies." (Emphasis added.)

This language is not ambiguous. It released LSI's "employees." Dorothy was one of those "employees." So the settlement agreement released Dorothy from "all liability" related to Brian's work injury. Under established principles of contract law, the settlement agreement provides Dorothy a complete defense against this civil suit, through which the Terrys seek to hold Dorothy liable for Brian's work injury.[5] *See, e.g.*, *Thornton v. Hubill, Inc.*, 571 N.W.2d 30, 33 (Iowa

---

[4] The parties' "settlement agreement" consisted of two documents. The first document is entitled "Compromise Settlement." The second document is entitled "Additional Terms of Settlement." Both documents were signed by Brian and his attorney on July 21, 2017. Brian's signatures were notarized.

[5] Although only Brian signed the settlement agreement, Lisa Terry does not contend she should be treated differently from Brian.

Ct. App. 1997) (noting "[a] release is a contract"; further noting unambiguous contracts "will be enforced as written"*).*

So I would affirm the district court's grant of summary judgment in Dorothy's favor. I respectfully dissent.

Certainly, there has been confusion about the proper *grounds* for summary judgment. Dorothy has advanced—and the district court accepted—a statutory theory based on Iowa Code chapter 85 (2015). As the majority correctly explains, that statutory theory is not valid.

But this does not mean we must reverse. "When we review a district court's ruling, [w]e first examine the basis upon which the trial court rendered its decision, affirming on that ground if possible." *In re Det. of Anderson*, 895 N.W.2d 131, 138 (Iowa 2017) (alteration in original) (citation omitted). In this case, the district court based its grant of summary judgment on two grounds: (1) the *invalid* statutory theory just mentioned; and (2) a valid *contractual* theory. Indeed, as the Terrys note in their appellate brief, the district court "*focused* on the contractual nature of a settlement." (Emphasis added.) The district court said this:

> The law favors settlement of controversies. *A settlement agreement is essentially contractual in nature.* The typical settlement resolves uncertain claims and defenses, and the settlement obviates the necessity of further legal proceedings between the settling parties. We have long held that voluntary settlements of legal disputes should be encouraged, with the terms of settlements not inordinately scrutinized.
>
> *Waechter v. Aluminum Co. of America*, 454 N.W.2d 565, 568 (Iowa 1990) (citing *Wright v. Scott*, 410 N.W.2d 247, 249 (Iowa 1987)). "[B]ecause *settlement agreements are essentially contracts*, we look to *the legal principles applicable to contracts* when interpreting them. When we do interpret settlement agreements, our primary concern is to ascertain the intention of the parties." *Id.* (citing *Mensing v.*

*Sturgeon*, 97 N.W.2d 145, 151 (1959)).  *By the plain language of the contract* (here, the Compromise Settlement including the Additional Terms of Settlement), Mr. Terry released all employees of LSI—including Ms. Dorothy—from any and all claims of injuries that he may have against them.  *Therefore, Ms. Dorothy is entitled to summary judgment on Mr. Terry's claim of gross negligence.*

(Emphasis added.)

As this excerpt shows, the "contractual . . . nature" of the settlement agreement—and its effect under the "legal principles applicable to contracts"—was indeed one of the "bas[e]s upon which the trial court rendered its decision." *Anderson*, 895 N.W.2d at 138 (citation omitted).  I believe we should "affirm[] on that ground." *See id.* (citation omitted).

A final note: It is true Dorothy's appellate brief does not draw a sharp line between her valid contractual theory and her invalid statutory theory.  Even so, she does argue that the settlement agreement "is a contract and the principles of contract law apply."  She does contend that, when "[l]ooking at all of the clearly stated language" in the settlement agreement, "the only conclusion that can be reached is that plaintiff Terry released any and all claims he may have against not only his employer and its insurer, but also against their employees."  And she does maintain that, because she "is one of the employees covered by the language in the settlement documents, her motion for summary judgment [was] properly granted."  So, in my view, Dorothy's brief adequately raises a contractual basis to affirm.  Even if it does not, we could still affirm on that basis because it was litigated below and, ultimately, it was one of the "bas[e]s upon which the trial court rendered its decision."  *See Anderson*, 895 N.W.2d at 138; *see also King v. State*, 818 N.W.2d 1, 12 (Iowa 2012) (noting "[o]ur rules provide that an appellee need not

even file a brief in our court"; further noting "we may choose to consider only grounds for affirmance raised in the appellee's brief, but we are not required to do so, so long as the ground was raised below").